NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2832
_____

UNITED STATES OF AMERICA

v.

DOROTHY ROBINSON
a/k/a "Mae-Mae"
a/k/a Dorothy Johnson

Dorothy Robinson,
                    Appellant


_____


On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Criminal Action No. 4:07-cr-00389-010)
District Judge:  Honorable Thomas I. Vanaskie
_____

Submitted Under Third Circuit LAR 34.1(a)
April 26, 2011
_____

Before: SLOVITER and GREENAWAY, JR., <u>Circuit Judges</u>, and POLLAK, <u>District Judge</u><sup>*</sup>

(Opinion filed May 11, 2011)
_____

OPINION
_____

---

<sup>*</sup> Honorable Louis H. Pollak, Senior Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

POLLAK, District Judge

In this appeal, Dorothy Robinson challenges the District Court's denial of her motion to withdraw her guilty plea. For the reasons that follow, we affirm the judgment of the District Court.

**I**

Because we write primarily for the parties, who are familiar with this case, we address only the facts and procedural history relevant to resolution of the issues raised in this appeal.

On September 27, 2007, Robinson was indicted, along with 13 others, in a 26-count indictment. The indictment charged Robinson and the others with engaging in a conspiracy to distribute over 500 grams of cocaine and crack cocaine within 1,000 feet of a protected zone. Robinson was also specifically charged with possession of crack cocaine with intent to distribute within 1,000 feet of public housing. A third superseding indictment was returned on August 14, 2008, and on September 4, 2008, Robinson pled not guilty to the charges.

The indictments stemmed in part from an August 1, 2007, "controlled buy" in which a government informant, Lewis "Guy" Tedesco, went to a residence to purchase drugs from Robinson. This residence was within 1,000 feet of a public housing project. Tedesco gave Robinson $200, and Robinson provided Tedesco with a plastic bag containing crack cocaine. Robinson ushered Tedesco out of the residence. Tedesco then

left and met with state troopers to turn over the purchased drugs.  Some of these events were captured on police videotape.

Robinson opted for a bench trial, which began on September 1, 2009.  Numerous witnesses testified on that first day, including Tedesco.  The witnesses established, among other things, that Robinson had sold drugs to Tedesco on August 1, 2007.  The police videotape was authenticated and shown at trial.  At the end of the first day of trial, Robinson asked to address the court.  She complained that her court-appointed attorney "totally ha[d] ignored [her]," was "falling asleep," and was "refusing to hear anything that [she was] saying."[1]  The court disagreed, noting that her attorney had paid "close attention" to the testimony and concluding that there was no basis on which to find her counsel inadequate.  Out of an abundance of caution, however, the court permitted Robinson to conduct her own cross-examination after her counsel finished his questions for all later witnesses.

On September 3, 2009, the third day of trial, Robinson renewed her complaints about her attorney.  The court granted a recess and allowed Robinson to confer with her husband and her attorney in a conference room.  Robinson returned a few hours later, indicating that she wished to enter a plea agreement and plead guilty to one count of the third superseding indictment.  In accordance with a written plea agreement and following an extensive colloquy with the District Court, Robinson then pled guilty to aiding and

---

[1] The trial attorney, Joseph O'Brien, was her fourth attorney in the District Court.  All references to Robinson's attorney herein, unless otherwise noted, refer to Mr. O'Brien. Robinson had terminated two previous attorneys, and a third had to leave after receiving an offer to work in a District Attorney's office.  Robinson's current counsel on appeal was her fifth and final attorney in the District Court.

abetting the distribution of crack cocaine within 1,000 feet of public housing in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) & 860(a) for her role in the sale of drugs to Tedesco. In exchange for the guilty plea, the plea agreement called for the government to drop all other charges against Robinson and agree that a 216-month sentence was appropriate.

The next day, September 4, 2009, Robinson submitted a handwritten letter to the District Court seeking to withdraw her guilty plea. This was reiterated in a typewritten letter on September 6, 2009. The District Court appointed present counsel to represent Robinson, and a formal motion to withdraw her guilty plea was filed on January 19, 2010. A hearing was held on February 12, 2010, and the District Court denied the motion on June 2, 2010.

Robinson was ultimately sentenced in accordance with the plea agreement to a term of 216 months' imprisonment followed by six years of supervised release, a $1,000 fine, and a $100 special assessment. This timely appeal followed.[2]

## II

Robinson now appeals the District Court's denial of her motion to withdraw her guilty plea.[3] We review a district court's denial of a motion to withdraw a guilty plea before sentencing for abuse of discretion. *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003).

---

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. This court has jurisdiction under 28 U.S.C. § 1291.
[3] Robinson does not, however, appeal the sentence that the District Court imposed.

4

"Once a court accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at h[er] whim." *Id.* Robinson must have a "fair and just reason" for withdrawing her plea of guilty, and she bears the "substantial" burden of demonstrating a "fair and just reason." *Id.* In determining whether a defendant has met her burden, "[a] district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts h[er] innocence; (2) the strength of defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Id.* We examine each factor in turn.

**A**

With respect to the first factor, assertion of innocence, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw h[er] guilty plea." *Id.* A defendant who has pled guilty must do more than simply reassert her innocence—it must be a "meaningful[] reassert[ion]." *Id.* In other words, a defendant must "give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Id.* (internal quotation marks omitted). It is not enough simply to proclaim one's innocence without "buttress[ing]" the assertion "by facts in the record." *Id.*

Here, Robinson did not "meaningfully" reassert her innocence. She has adduced no evidence that she did not commit the offense to which she voluntarily and intelligently pled guilty. At the change of plea hearing, Robinson acknowledged that she had signed the plea agreement, reviewed it with her attorney, and was satisfied that she understood the terms and conditions of the plea agreement. Robinson, as well as her counsel, also

5

indicated that the government's summary of the key terms of the plea agreement was accurate. Moreover, the District Court took pains to explain other issues in the plea agreement each time Robinson asked a question.

The government then provided the factual basis for Robinson's anticipated guilty plea. The AUSA: (1) recounted the testimony of Tedesco, who testified that he had purchased crack cocaine from Robinson; (2) recalled the videotape played at trial which showed Tedesco leaving the place of sale with Robinson; (3) recounted the testimony of a DEA agent who witnessed the circumstances around the controlled buy; (4) proffered the anticipated testimony of an official who would establish that the point of sale was within 1,000 feet of public housing; and (5) proffered the anticipated testimony of a DEA chemist who would establish that the substance purchased during the controlled buy and turned over to authorities was cocaine base.

The District Court asked Robinson if the government's recitation of facts was accurate, to which she replied "Yes, sir." Robinson replied "Yes, sir" to the question of whether the "government could prove beyond a reasonable doubt that [she] participated in the distribution of crack cocaine to Guy Tedesco on August 1, 2007." And Robinson replied "Yes, sir" when asked whether it was her voluntary decision to plead guilty to the distribution charge. Next, after acknowledging the rights she was giving up by pleading guilty, her plea to count 21 of the third superseding indictment was recorded as "Guilty" and confirmed with a signed document. Finally, when asked if she had any other questions, she responded "No, sir." These "solemn declarations in open court carry a

6

strong presumption of verity," *Blackledge v. Alliston*, 431 U.S. 63, 74 (1977), and Robinson's bald assertions of innocence after the fact do not rebut that presumption.

The only support Robinson offers for her motion is her assertion that other witnesses (her co-defendant sons and boyfriend (her husband is not a defendant)) would be available to testify that she did not distribute crack cocaine to anyone, and state officers/employees would testify that they never saw evidence of drug distribution during their visitations. These potential witnesses, however, do not transform her bald assertion of innocence into a meaningful one. These witnesses were available prior to the guilty plea, and their anticipated testimony would not refute the corroborated evidence of the "controlled buy" already presented to the court and admitted as true by Robinson during the change of plea hearing. Likewise, the fact that Robinson "may elect to testify at her trial . . . in direct contradiction to the government's evidence" does not make her assertion of innocence meaningful when (a) that right was always available to her, and (b) it directly contradicts her own solemn declarations in open court.

Robinson has not given "sufficient reasons to explain [the] contradictory positions" taken, and has not "buttressed" the assertion "by facts in the record." *Jones*, 336 F.3d at 252. Because Robinson has not meaningfully reasserted her innocence, this factor weighs against withdrawal of the guilty plea.

**B**

With respect to the second factor, the strength of Robinson's reasons for withdrawing the plea, Robinson claims that she was "increasingly overwhelmed during her trial" and that family pressure combined with a "completely deteriorated relationship

7

with trial counsel" warrants withdrawal. We are not persuaded. "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged h[er] guilt by pleading guilty." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (internal quotation marks omitted). Robinson's reasons here amount to little more than a change of heart insufficient to warrant withdrawal of her voluntary and intelligent guilty plea.

As a preliminary matter, family pressure to plead guilty is not a sufficient basis for granting leave to withdraw a guilty plea. *See, e.g.*, *United States v. Pellerito*, 878 F.2d 1535, 1541 (1st Cir. 1989) (holding that family pressure, though "probative of an accused's *motivation* for pleading guilty, . . . does not necessarily show coercion, duress or involuntariness" (emphasis in original)); *United States ex rel. Brown v. LaVallee*, 424 F.2d 457, 461 (2d Cir. 1970) (concluding that pressure from defendant's lawyers and mother to plead guilty was not coercive, but rather "sound advice"). Criminal trials are always stressful, but the stress inherent in a criminal trial does not provide a strong reason for withdrawing a guilty plea. Here, the District Court engaged in an extensive colloquy with Robinson before satisfying itself that, notwithstanding the stress of trial, her plea was knowing, voluntary, and supported by an independent basis in fact for each of the essential elements of the crime to which Robinson pled guilty.

Robinson's primary reason for withdrawing her plea is her claim of a "completely deteriorated relationship with trial counsel." Robinson does not, however, go as far as to assert ineffective assistance of counsel. We disagree that this is a strong reason. First,

8

our review of the trial record shows that her counsel was more than adequate, and there is no justification on the basis of counsel's performance to warrant withdrawal of the plea. Second, whatever concerns Robinson had about counsel were clearly articulated to the District Court prior to the guilty plea, and the District Court went out of its way to ensure that Robinson was adequately represented. Third, to the extent that Robinson claims that "she had no alternative but to enter a guilty plea without a factual foundation," her claim is based on false premises. She had an alternative—she could have pursued, and indeed, up to that point did pursue, a criminal trial. Moreover, there was indeed a factual foundation for her plea in the form of testimony and video footage establishing her culpability on the drug charge to which she pled guilty, and she agreed on the record in open court that the government could prove all of the elements of the offense beyond a reasonable doubt.

In the time between Robinson's plea and her motion to withdraw, nothing changed except that she changed her mind and decided to revisit her defense. In sum, Robinson has not set forth "strong reasons" for withdrawal, and this factor also weighs against withdrawal of the guilty plea.

### C

The third factor, prejudice to the government, is not reached when "a defendant has failed to demonstrate that the other factors support a withdrawal of a plea." *Jones*, 336 F.3d at 255. Because we conclude that Robinson did not meaningfully reassert her innocence or provide strong reasons for withdrawal of the guilty plea, we do not address

9

the District Court's conclusion that the government would have been prejudiced by withdrawal of the guilty plea.

## III

Robinson has not carried her "substantial" burden of demonstrating a "fair and just reason" for withdrawing her plea, and thus, the District Court did not abuse its discretion in denying her motion. We affirm the judgment of the District Court.